Slip Op. 18 -161

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| NORTHERN TOOL & EQUIPMENT COMPANY, INC., | |
| Plaintiff, | |
| v. | Before: R. Kenton Musgrave, Senior Judge<br>Court No. 14-00146 |
| UNITED STATES, | |
| Defendant. | |

**OPINION**

[Cross-motions for judgment on challenge to denial of protest over rate of antidumping duties assessed by U.S. Customs and Border Protection; judgment for the defendant.]

Decided: November 23, 2018

*David P. Sanders* and *Jonathan M. Zielinski*, Cassidy Levy Kent (USA) LLP, of Washington, DC, for the plaintiff. Also on the brief was *Katherine C. Thornton*, consultant.

*Hardeep K. Josan*, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for the defendant. Also on the brief were *Chad A. Readler*, Acting Assistant Attorney General and *Amy M. Rubin*, Assistant Director. Of counsel on the brief was *Paula S. Smith*, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Musgrave, Senior Judge: This action challenges the denial of a protest to Customs and Border Protection ("CBP") on the amount of antidumping ("AD") duties determined owing on hand trucks imported from the People's Republic of China ("PRC"). The parties cross-move for judgment pursuant to USCIT Rule 56. For the following reasons, judgment must be entered in favor of the defendant.

I. *Background*

In AD duty cases involving a non-market economy, AD duties are assessed based upon the rate assigned to the exporter. In the process of that determination, the U.S. Department of Commerce, International Trade Administration ("Commerce" or "DOC"), employs a rebuttable presumption that all exporters or producers operating within a non-market economy are subject to state control, and all producers and exporters that do not rebut that presumption are assigned the non-market economy rate. *See*, *e.g.*, *Michael Stores, Inc. v. United States*, 766 F.3d 1388, 1390 (Fed. Cir. 2014). The PRC's status as a non-market economy did not change during the proceeding at bar.

When non-market economy merchandise is exported by an exporter from a market economy third country, the applicable rate is that of the non-market economy supplier. *See Transcom, Inc. v. United States*, 24 CIT 1253, 121 F. Supp. 2d 690 (2000). The purpose of this is to ensure that high-rate suppliers do not funnel their products through market economy exporters and to ensure that market economy resellers "bear the consequences" of using non-market economy suppliers. 24 CIT at 1269, 121 F. Supp. 2d at 705.

In 2004, Commerce issued an amended affirmative final determination as part of an AD investigation of unfair pricing of hand trucks from the PRC. *See Amended Final Determination of Sales at Less Than Fair Value: Hand Trucks and Certain Parts Thereof From the PRC*, 69 Fed. Reg. 65410 (Nov. 12, 2004); *see also Notice of Final Determination of Sales at Less Than Fair Value: Hand Trucks and Certain Parts Thereof from the PRC*, 69 Fed. Reg. 60980 (Oct. 14, 2004). During the investigation, Commerce determined Qindao Taifa Group Co., Ltd. ("Taifa"), among other respondents, eligible for a rate separate from that of the PRC entity. 69 Fed. Reg. at 60981-82.

*See Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Hand Trucks and Certain Parts Thereof From the PRC*, 69 Fed. Reg. 29509, 29511 (May 24, 2004). The ultimate AD duty order instructed CBP to require cash deposits for PRC hand trucks produced or exported by Taifa equal to the specific weighted-average antidumping duty margin of 26.49 percent. *See Notice of AD Duty Order: Hand Trucks and Certain Parts Thereof From the People's Republic of China*, 69 Fed. Reg. 70122, 70123 (Dec. 2, 2004) ("Order"). The order instructed the cash deposit rate for the PRC-wide entity as 383.60 percent. *Id.*

When appropriate, interested parties may request an administrative review of the cash deposit rate and assessment. The triggering of a review suspends liquidation for all entries subject to an antidumping duty order until the conclusion thereof, whereupon Commerce will instruct CBP to assess antidumping duties on the merchandise through liquidation instructions. CBP's role in that process is ministerial, *i.e.*, following Commerce's instructions when assessing antidumping duties. *See Mitsubishi Electronics America, Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1993).

Commerce published the final results of the AD administrative review for the period from December 1, 2007 to November 30, 2008 ("POR"), which covers the entries at issue in this case, in May 2010. *See Hand Trucks and Certain Parts Thereof from the PRC: Final Results of AD Duty Administrative Review*, 75 Fed. Reg. 29314 (May 25, 2010). No party requested administrative review of Taifa for the period in question. *See id.*

During the POR, the plaintiff Northern Tool & Equipment Company ("Northern Tool") had imported hand trucks from the PRC via eight entries. *See* Amended Compl. at ¶11; Amended Ans. at ¶11. Northern Tool negotiated the purchase of the hand trucks with ITI Co., Ltd.

("ITI"), a Western Samoa corporation headquartered in Hsi-Chih, Taipei, Taiwan ("ITI (Taiwan)"). ITI (Taiwan) relied on what may or may not have been a related-party purchasing agent, Intradin Co., Ltd. ("Intradin") in order to "coordinate" the sourcing of the hand trucks from Taifa. Regardless, during the relevant period ITI had an office in Shanghai ("ITI (Shangai)"), as did Intradin, and neither had established an AD duty rate separate from that of the PRC-wide entity.

      Northern Tool identified Taifa as the manufacturer of the hand trucks on the entry documents and posted a cash deposit with CBP based upon Taifa's rate of 26.49%. More precisely, the *pro forma* invoices are on the letterhead of ITI (Shanghai), are signed by ITI Co., Ltd. as the "seller," name Northern Tool as the "buyer," and indicate the terms of sale as "FOB Chinese port (Qingdao)," "FOB Shanghai (Incoterms 2000)," or "FOB Chinese port (Shanghai)." Taifa is not named on the *pro forma* invoices or on the sea waybills but is identified as the manufacturer of the subject hand trucks on the commercial invoices. The commercial invoices and packing lists presented at entry are on the letterhead of ITI (Shanghai). Title to the goods at issue in this case transferred to Northern Tool in the PRC. *See generally*, *e.g.*, Def's Statement of Undisputed Material Facts ¶¶ 10-12, 14-19 (citations omitted).

      After publishing the final review results for the POR, Commerce issued two liquidation instructions. The first, which the port followed, stated:

> For all shipments of hand trucks and parts thereof from the . . . [PRC] exported by the PRC-wide entity (A-570-891-000) entered, or withdrawn from warehouses, for consumption during the period 12/01/2007 through 11/30/2008, assess an antidumping liability equal to 383.60 percent of the entered value, except for those exported by Qindao Taifa Group Co., Ltd. or Since Hardware (Guangzhou) Co., Ltd.

Message No. 0161304 (June 10, 2010), Pl's Ex. N. The second liquidation instruction stated:

> For all shipments of hand trucks and parts thereof from the . . . [PRC] exported by the firms listed below and entered, or withdrawn from warehouse, for consumption during the period 12/01/2007 through 07/27/2008, assess an antidumping liability equal to the cash deposit or bonding rate at the time of entry.
>
> Exporter
> Qindao Taifa Group Co., Ltd. (aka Qingdao Taifa Group Import & Export Co., Ltd)

Message No. 0166303 (June 15, 2010), Pl's Ex. O.

        The port followed the first instruction. CBP found in August 2010 that Taifa was the producer but not the exporter of the hand tucks and assessed antidumping duties at the PRC-wide entity rate on Northern Tool's entries. *See* Notice of Action (CBP Form 29 dated 08/13/10), Pl's Ex. D. Northern Tool protested that assessment in November 2010, arguing that the duty rate deposited at entry was the proper rate. CBP denied Northern Tool's protest, as explained by Headquarters Ruling Letter H152586 (Dec. 20, 2013), Pl's Ex. H:

> The port determined the former instruction to be applicable because while the hand trucks were produced by Taifa, they were not exported by Taifa, but by ITI (Shanghai). The port relied upon the sales documents and two previous inquiries with Commerce that sought a clarification of which instruction was applicable on similarly situated entries, where Taifa was the manufacturer, but not the exporter. Commerce stated in both instances that if there is no separate rate for the exporter, than the PRC-wide rate applied. Because ITI (Shanghai) did not have a separate rate, CBP applied the PRC-wide of 383.60 percent.

## II. *Discussion*

        Northern Tool argues this case concerns the denial of its protest to CBP; that it fulfilled the prerequisites of 28 U.S.C. §2637(a); that jurisdiction here is proper under 28 U.S.C. §1581(a); and that *de novo* review is therefore appropriate. *See* 28 U.S.C. § 2640(a)(1). On the merits, Northern Tool contends the "exporter" for purposes of the assessment of AD duties in this instance is ITI (Taiwan), not ITI (Shanghai), and that ITI (Taiwan) is a "third country exporter" not

subject to the PRC-wide entity rate. Alternatively, Northern Tool contends that if the court finds the exporter not to be ITI (Taiwan), then Taifa is the exporter under the so-called "knowledge test" employed by Commerce because Taifa knew that the hand trucks were being sold to Northern Tool through ITI/Intradin and the hand trucks were shipped directly from Taifa's factory in the PRC to Northern Tool in the United States.

The defendant's cross-motion for judgment argues the court does not possess jurisdiction. It contends: that CBP's role in effectuating Commerce's liquidation instructions was merely ministerial; that CBP was only required to determine whether Taifa was the exporter for the entries at issue, and the only possible protestable decision by CBP that can be challenged under section 1581(a) on the case is CBP's factual finding that Taifa was not the exporter; that Northern Tool's (initial) argument admits this fact; that Taifa was not identified as the exporter on the commercial documents; that the two legal claims Northern Tool advances for why the rate assigned to Taifa should apply to its entries should not be heard because both relate to decisions that would have to have been made, if at all, by Commerce and incorporated into that agency's instructions to CBP; that Customs made no decision on whether Taifa knew that the hand trucks it sold were destined for the United States (*see*, *e.g.*, Pl. Br. at 18-19 -- "CBP made no finding of whether Taifa had knowledge that its merchandise was destined for the United States"; H152586 at 6 -- CBP declining to apply the knowledge test, recognizing that such a test is conducted by Commerce and that Commerce made no reference to the test in its instructions); and thus there is no protestable decision by CBP before the court under 28 U.S.C. §1581(a) of the type enumerated by 19 U.S.C. §1514. Def's Br. ay 6-10; Def's Reply at 5. *See Mitsubishi Electronics America, Inc. v. United*

*States*, 44 F.3d 973, 976 (Fed. Cir. 1994); *see also Corrpro Companies, Inc. v. United States*, 433 F.3d 1360, 1365 (Fed. Cir. 2006) ("the existence of a protestable decision of the type enumerated in 19 U.S.C. § 1514 is a condition precedent for jurisdiction to lie in the Court of International Trade under section 1581(a)"), quoting *Xerox v. United States*, 423 F.3d 1356, 1365 (Fed. Cir. 2005).

The court disagrees that it does not possess jurisdiction to review whether CBP *correctly* applied Commerce's liquidation instructions with respect to Northern Tool's entries. *See infra*. CBP will only permit further review of protests that are "valid," *see* 19 C.F.R. 174.26(a), and it acknowledged that Northern Tool's protest was valid by accepting Northern Tool's request for further review, stating explicitly "inasmuch as Northern Tool protests the liquidation, *i.e.*, disputes the application by CBP of Commerce's liquidation instructions, this matter is protestable." CBP still had to then consider factual data in order to determine which of the two instructions was to be applied.

CBP assessed the facts before it, addressed Northern Tool's claims, and reached a legal conclusion regarding how to apply the liquidation instructions in its denial of Northern Tool's protest. These included the findings that: (1) ITI (Taiwan) was not the exporter because it was not the invoicing party, (2) Taifa was not the exporter because it did not appear in any of the sales documents between Northern Tool and ITI (Shanghai), (3) a company's headquarters does not determine the exporter of the sale, (4) Northern Tool's payments were made to a bank in Shanghai; and (5) ITI (Taiwan)'s listing as the exporter in the sea waybill is not determinative of which entity is the exporter. All of these legal and factual findings led CBP to conclude that "ITI (Shanghai) was the company that purchased the hand trucks from Taifa, owned the merchandise, and then sold it to

Northern Tool. Based on the provided documents, we determine that for purposes of this entry, ITI (Shanghai) was the exporter of the hand trucks." H152586 at 7.

In its brief contesting CBP's conclusion as to the exporter, Northern Tool points to two other protests involving the same AD order, period of review, liquidation instructions, and merchandise, and on those protests CBP granted the appeals. *See* HQ H155957 (Mar. 29, 2013); HQ H192395 (Jan. 6, 2014). While CBP rulings are to be accorded a measure of deference in proportion to their "power to persuade", *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001), quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), and both HQ H155957 and HQ H192395 might appear persuasive insofar as both rulings concerned exporters located in Hong Kong, and therefore a stronger argument might be made for an exporter located in Taiwan, the court does not perceive clear error in CBP's analysis and consideration of the commercial documents that support its finding of ITA (Shanghai) as the exporter of Northern Tool's entries, as articulated in HQ H152586.

Northern Tool's papers proceed to argue otherwise, but the remainder thereof veer into territory controlled by the defendant's jurisdictional contention, to wit, that Northern Tool could have pressed the arguments on "third country exporter" and "knowledge test" to Commerce by requesting an administrative review and to challenge any determination by Commerce that it believed to be incorrect under 28 U.S.C. §1581(c). *See* 19 C.F.R. § 351.213(b)(3) (providing that an importer of the merchandise may request a review of an exporter or producer of the subject merchandise imported by that importer). The defendant characterizes that Northern Tool "improperly" sought such a determination from CBP and now "improperly" invokes the court's jurisdiction under 28 U.S.C. § 1581(a). Def's Br. at 10-11, referencing *Certain Frozen Warmwater*

*Shrimp From the People's Republic of China: Final Results of Administrative Review; 2011-2012*, 78 Fed. Reg. 56,209 (Sep. 12, 2013) (finding that Hilltop, an entity who claimed to be a "Hong Kong exporter," failed to rebut the presumption that it and its PRC affiliates were free from government control and, thus, entitled to a separate rate); Pl's Ex. F (Inquiry No. 6009) (Commerce explaining that Taifa having prior knowledge that merchandise was destined for the United States "could be most pertinent to Commerce" but would not be relevant for determining the correct rate for assessment purposes). In other words, the defendant contends, Northern Tool did not avail itself of 28 U.S.C. §1581(c) recourse and should not be permitted to circumvent that process by action here under section 1581(a).

Ultimately, on the facts presented, the court must agree with the defendant insofar as 28 U.S.C. §1581(a) jurisdiction does not lie over what Northern Tool is seeking here: to establish that ITI was not a PRC exporter and that the relevant entries should not be subject to the PRC-wide entity rate. "[I]t is for Commerce to make such a determination, not CBP in its ministerial role." Def's Br. at 10. It is also plain from the correspondences between CBP and Commerce that the ultimate decision of which instruction applied to a particular circumstance rested with Commerce. *See* Pl's Exs F, G. And Northern Tool's own briefing appears to acknowledge the heavy hand of Commerce in determining the entity that is the exporter for antidumping duty purposes. *See* Pl. Br. at 10 ("when determining which entity is the exporter, CBP and Commerce do not make the decision based solely on which entity shipped the merchandise or issued the invoice"), 12 ("CBP and Commerce identify exporter by analyzing . . . which entity negotiates the price"), and 15 ("this reliance contradicts CBP's and Commerce's practice for determining which entity is the exporter").

Court No. 14-00146                                                                                                          Page 10

      Nonetheless, as above indicated the court has concluded that jurisdiction over the matter does lie, albeit not pursuant to 28 U.S.C. §1581 subsection (a) but pursuant to subsection (i)(4) concerning the "administration and enforcement" of the unfair trade laws. 28 U.S.C. § 2640(e) directs the court to evaluate 28 U.S.C. §1581(i) cases under the standards set forth in the Administrative Procedure Act, 5 U.S.C. §706. The only relevant standard thereof would be the arbitrary and capricious standard of subsection 706(2)(A). Under that standard, the court cannot conclude CBP's "decision making," upon which Northern Tool purports to base the denial of its protest on the implementation of Commerce's liquidation instructions, to have been arbitrary or capricious. Northern Tools arguments and evidence are, at best, only a different interpretation of what CBP concluded on the case, but the record evidence CBP iterates in support of its position, and its conclusion on the identity of the "exporter," is sufficient to satisfy the APA "rational" standard, *i.e.*, CBP has not "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983).

### III. *Conclusion*

      In accordance with the foregoing, judgment will be entered for the defendant.

      So ordered.

                                         /s/  R. Kenton Musgrave
                                         R. Kenton Musgrave, Senior Judge

Dated: November 23, 2018
       New York, New York